## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BILLY HUNT,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-cv-1559-RJD** |
| **JEFFREY WEHKING, TERRI SCHULTE, GLASSCOW, STOVER, LT. JICK, and LT. CUMMINGS,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**DALY, Magistrate Judge:**

Plaintiff Billy Hunt, an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Hunt alleges that he was denied mental healthcare.[1] He alleges violations of the Eighth Amendment as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and/or the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e.

---

[1] Hunt also recently submitted a letter (Doc. 9) indicating that he was told by another inmate that his Complaint was illegible. The Court has not issued an order regarding Hunt's Complaint and the Court finds the Complaint to be legible.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[2] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

From 2013 to the present, Hunt has experienced incidents of sexual assault and other abuse involving his cellmates. These events led to Hunt experiencing mental health issues and caused him to refuse double-celling on a number of occasions (Doc. 1, pp. 5-6). In March 2025, Hunt transferred to Centralia Correctional Center where he was initially double-celled (*Id*. at p. 6). Hunt declared a hunger strike and was ultimately placed in segregation for refusing housing (*Id*.). After his release from segregation, Hunt was again placed in a double-man cell (*Id*.). He felt threatened and again declared a hunger strike for safety reasons (*Id*.). He continued to complain about mental health issues with officials (*Id*.).

On June 15, 2025, Lieutenant ("Lt.") Cummings pulled Hunt out of the lunch line and asked if he had received a cellmate yet (Doc. 1, p. 6). Hunt alleges this statement

_____

[2] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and the medical providers, to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these entities.

caused him anxiety and he believes that Cummings commented on his situation in order to cause him anxiety (*Id*.). As a lieutenant, Hunt alleges that Cummings should know about inmate placements, and he did not need to inquire of Hunt about his placement status (*Id*. at pp. 6-7). Later that day, Hunt spoke to Sergeant Lohmay about Cummings's comments. The sergeant indicated that he would contact mental health (*Id* at p. 7). A correctional officer contacted the mental health staff person at home, but the staff member was not available (*Id*.).

The next day, Hunt reported an anxiety attack to Lt. Jackson. On June 17, 2025, Hunt wrote to mental health staff about his mental health needs (Doc. 1, p. 7). On June 19 and 21, 2025, he spoke to Correctional Officer ("C/O") Perish about obtaining an appointment with mental health (*Id*.). On June 28, 2025, Hunt again wrote to mental health staff noting that he was having a breakdown due to fear of receiving a cellmate (*Id*.).

On June 30, 2025, Hunt spoke to ADA Coordinator Terri Shulte and asked to be single-celled due to his mental disability and inability to sleep (Doc. 1, p. 7). On July 4, 2025, he also spoke to Warden Jeffrey Wehking, noting the same issues (*Id*.). Also in July, Hunt wrote to Terri Shulte, Mental Health Administrator Stover, and Wehking asking to be single-celled due to his mental disability and inability to control his anxiety or sleep due to fears of being double-celled (*Id*. at p. 8). Hunt alleges that the officials ignored his disability, ignored his correspondence, and failed to properly address his grievances (*Id*. at pp. 1-3).

3

On May 18, 2025, he wrote a grievance asking to be single-celled due to his mental illness and fears based on previous attacks (Doc. 1, p. 8). On June 20, 2025, he wrote a second grievance. In June, he received a cellmate (*Id*.). The presence of the cellmate caused him additional fear (*Id*.). As a result, he suffered from lack of sleep, headaches, and heart palpitations (*Id*.). Hunt wrote a letter to Warden Wehking noting that he thought he was being retaliated against for writing his earlier grievance (*Id*.). He continues to see mental health but believes he is ignored (*Id*.). Also in early June, Lt. Jick pulled Hunt out of the lunch line and asked if he had received a cellmate (*Id*.). As a result of the question, Hunt suffered a panic attack (*Id*. at pp. 8-9). Hunt has informed all defendants that he suffers from ADHD, bipolar disorder, anxiety, paranoia, and learning disabilities (*Id*. at p. 9). Hunt believes the defendants know that their actions cause him emotional distress.

## Preliminary Dismissals

Hunt alleges that both Lt. Cummings and Lt. Jink, on separate occasions, pulled him out of the lunch line and inquired as to whether or not he had received a cellmate. Hunt alleges that both officers should have known about his cell status, and he believes that the question was an attempt to trigger his anxiety. But the allegations do not allege a constitutional violation. Although Hunt alleges that all Defendants acted with deliberate indifference to his mental health needs and failed to protect him, there are simply no allegations that these officers' conduct rose to the level of a constitutional violation. Even if viewed as a threat or verbal harassment, such questioning does not violate the constitution. *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir.2000); *Antoine v. Uchtman,* 275 F. App'x 539, 541 (7th Cir.2008). Some threats may rise to the level of cruel

4

and unusual punishment. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009).

"The test for what constitutes cruel and unusual punishment is an objective one. It is not

the actual fear of the victim, but what a reasonable victim would fear." *Id.* (internal

quotations omitted). Here, Hunt alleges that the officers asked if he had a cellmate in

order to cause him anxiety, but there are no allegations to suggest that their statements

were made to cause fear. Nor is there any suggestion that a reasonable person would be

fearful based on those interactions. Thus, his claims against Cummings and Jink are

**DISMISSED without prejudice**.

Hunt also fails to state a viable state law claim for intentional infliction of

emotional distress. To proceed with this claim, he must show that the officials acted in an

extreme and outrageous way, intended to inflict severe emotional distress or knew of the

high probability that it would occur, and caused the plaintiff to suffer from severe

emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 392 (1994) (citing Restatement

(Second) of Torts § 46, comment d (1965)). But other than merely stating in conclusory

fashion that defendants knew their conduct would cause "unnecessary and wanton

infliction of emotional distress," Hunt's allegations fail to establish any of the elements

for the emotional distress claim. He simply alleges that Defendants knew of his mental

condition and knew their actions might cause him distress. These allegations are not

enough to state a claim, and the state law claim is **DISMISSED without prejudice**.

Hunt also alleges that he spoke to Sergeant Lohmay, Lieutenant Jackson, and

Correctional Officer Perish about his need for mental healthcare. But these individuals

are not listed as defendants in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United*

*States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Further, Hunt fails to allege that these officials acted with deliberate indifference to his need for care. Thus, any potential claim against Lohmay, Jackson, and Perish is **DISMISSED without prejudice**.

Hunt lists Glasscow, a mental health professional at Centralia, as a defendant in the case caption but he fails to include him in the statement of claim. Although Hunt alleges that he saw mental health professionals at Centralia, he fails to identify Glasscow as one of those professionals. He fails to include any allegations regarding his interactions with Glasscow. He merely lists him as a defendant and states in conclusory fashion that Glasscow intentionally inflicted unnecessary pain and distress by ignoring his serious mental illness, his reports of threats, and thoughts of self-harm (Doc. 1, p. 3). Thus, Glasscow is also **DISMISSED without prejudice**.

Hunt also mentions a possible retaliation claim, alleging that he received a cellmate in retaliation for filing his first grievance. In order to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). But Hunt fails to allege that the placement of a cellmate was motivated by his prior grievance. Nor has he tied any of the named defendants to the placement decision. He merely alleges that he wrote to Warden Wehking after the placement and informed him of the retaliatory act. There are simply no allegations to suggest that any of the defendants engaged in retaliation. Thus, to the extent Hunt attempts to allege a retaliation claim, that claim is **DISMISSED without prejudice**.

6

Finally, Hunt attempts to bring a "*Monell*" claim against Warden Wehking (Doc. 1, p. 10). There are several issues with this alleged claim. Hunt fails to allege that the denial of mental healthcare or denial of a single-man cell was based on a policy or practice of the warden. Further, a policy or practice claim against an employee of the state is viewed through the lens of an official capacity claim against the employee for his or her role. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) ("plaintiff sued the defendants in their official capacity, and so the lawsuit is against a state agency"). The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and to state employees, except for when a plaintiff seeks injunctive relief against an official in their official capacity for a continuing violation. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). But Hunt does not seek injunctive relief in this case (Doc. 1, pp. 10-11). Thus, any potential policy and/or practice claim is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:**    **Eighth Amendment deliberate indifference claim against Jeffrey Wehking, Terri Schulte, and Stover for denying Hunt mental healthcare and access to a single-man cell.**
>
> **Count 2:**    **ADA and/or RA claim for failing to provide Hunt with a single-man cell.**

**Count 3:**       **Eighth Amendment failure to protect claim against Jeffrey Wehking, Terri Schulte, and Stover for failing to protect Hunt in light of his previous abuse and mental health conditions.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

**Counts 1 and 2**

At this stage, Hunt states viable claims in Counts 1 and 2. He alleges that based on his mental health needs, he needs mental healthcare and access to a single-man cell. He alleges that prior experiences with cellmates have caused even more mental instability, requiring a single-man cell. He alleges that Shulte, Stover, and Warden Wehking are aware of his history and mental health conditions, and he has written and spoken to them on several occasions. He further alleges that these officials have denied his request for care and for a single-man cell. At this stage, Hunt states a viable deliberate indifference claim in Count 1.

In order to state a claim of discrimination under the ADA and/or RA, a plaintiff must show: (1) that he suffers from a disability as defined in the statute, (2) that he is

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). Hunt again alleges that he is entitled to be in a single-man cell but has been denied his requested accommodation. At this stage, Hunt states a viable claim under the ADA and/or RA. The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA/RA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity only, as the proper defendant for Hunt's claim in Count 2.

**Count 3**

Hunt fails, however, to state a viable failure to protect claim. In order to state a failure to protect claim, a plaintiff must allege that the harm to him was "objectively, sufficiently serious and that the defendants acted with deliberate indifference to his health or safety." *Kupsky v. McLaren*, 748 F. App'x 74, 76 (7th Cir. 2019) (quotations omitted). A plaintiff must show that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing "that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Hunt fails to identify a specific, impending threat. Instead, Hunt alleges that he has a general fear and paranoia of having a cellmate due to prior experiences with cellmates.

9

But he fails to point to any actual threat posed by a specific potential cellmate. His allegations fail to allege a failure to protect claim and his claim in Count 3 is **DISMISSED without prejudice.**

### Motion for Counsel

As to Hunt's motion for counsel (Doc. 3), Hunt indicates that he is unable to afford counsel, the claims are complex, and he is mentally disabled. But he fails to document any attempts to obtain counsel on his own. In determining whether to recruit counsel, the Court is directed to make a two-fold inquiry: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). The first prong of the analysis is a threshold question. If a plaintiff has made no attempt to obtain counsel on his own, the court should deny the request. *See Pruitt*, 503 F.3d at 655. Hunt fails to indicate whether he has tried to seek counsel. Thus, his request for counsel is **DENIED**. Should he choose to move for recruitment of counsel at a later date, the Court directs Hunt to (1) contact at least **three** attorneys regarding representation *in this case* prior to filing another motion, (2) include in the motion the name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation. If he is unable to contact an attorney, he should include a statement explaining why he cannot meet this threshold requirement.

## Disposition

For the reasons stated above, Count 1 shall proceed against Warden Jeffrey Wehking, Terri Shulte, and Mental Health Administrator Stover. Count 2 shall proceed against Latoya Hughes (official capacity only). Count 3 and all other potential claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Warden Jeffrey Wehking, Terri Shulte, Stover, and Latoya Hughes (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Hunt. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Hunt, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

11

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Hunt's claims involve his mental healthcare, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Hunt, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Hunt is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 17, 2025.**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the

defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**